IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TONYA LYNN DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:22-cv-348-ECM |
| | ) | (WO) |
| ELMORE COUNTY JAIL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Now pending before the Court are motions to dismiss filed by Mark K. McKenzie ("McKenzie") (doc. 61); Leon Smith ("Smith") and Town of Coosada ("Coosada") (doc. 48); and Bill Franklin ("Franklin") and Elmore County Jail (doc. 49). Tonya Lynn Davis ("Plaintiff") brings claims as the administrator of the estate of Jordan Kelly Davis ("Davis"), an inmate who died at the Elmore County Jail on June 7, 2020. Plaintiff brings claims against all Defendants under 42 U.S.C. § 1983 for violations of his Fourth Amendment and Fourteenth Amendment rights for failure to provide medical care and under state law for wrongful death. The motions have been fully briefed and are ripe for review. After careful consideration of the motions, briefs, and applicable law, the Court concludes that the motions to dismiss are due to be GRANTED on Plaintiff's Fourth and Fourteenth Amendment claims. Because the Court declines to exercise

supplemental jurisdiction over the state-law claim in this case, the remaining state-law wrongful death claim will be DISMISSED without prejudice.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction of the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard

requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotations omitted). Indeed, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted).

A complaint is due to be dismissed "under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Once a defendant raises a qualified immunity defense, that defendant "is entitled to dismissal before the commencement of discovery," unless the plaintiff can demonstrate that her allegations in the complaint "state a claim of violation of clearly established law." *Id.* (citation omitted). Absent sufficient factual allegations to support "a claim of violation of clearly established law," the defendants are "entitled to qualified immunity," and "their Rule 12(b)(6) motion to dismiss must be granted." *Id.*

## IV.  FACTS AND PROCEDURAL HISTORY[1]

Plaintiff, as the administrator of Davis' estate, filed a complaint on June 7, 2022. On August 22, 2022, the Court dismissed the complaint without prejudice and gave Plaintiff until September 30, 2022 to file an amended complaint (doc. 29), which she did (doc. 30).  On November 18, 2022, the Court again dismissed the amended complaint without prejudice. (Doc. 44).  On December 29, 2022, Plaintiff filed this second amended complaint ("complaint"). (Doc. 45).

The complaint alleges facts arising from the death of Plaintiff's husband, Davis. On June 6, 2020, McKenzie, a Coosada police officer, arrested Davis for driving under the influence.   McKenzie observed Davis having issues driving, walking, and communicating, but did not smell alcohol on Davis during the arrest.  Plaintiff alleges that McKenzie knew either that Davis was "under the influence of an unknown substance[,] . . . not alcohol," or that Davis "was having some sort of medical issue that was affecting his ability to drive, walk, and/or communicate." (Doc. 45 at 3).  According to the complaint, rather than provide Davis with medical care, McKenzie took Davis to the Elmore County Jail.  Plaintiff thereafter allegedly called the Jail and advised someone at the Jail that Davis had medical issues and needed prescription medication.  However, Davis was not provided medical treatment.  The next morning, on June 7, 2020, jail employees found Davis found unresponsive and pronounced him dead.

---

[1]  This recitation of the facts is based on Plaintiff's operative complaint, the second amended complaint ("complaint").  The Court recites only the facts pertinent to resolving the Defendants' motions to dismiss. For purposes of ruling on the motions, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Plaintiff.

4

Based on these facts, Smith brings three claims in the complaint. Count I, brought pursuant to 42 U.S.C. § 1983, is against McKenzie, Coosada, and Smith—Chief of Police for the Town of Coosada—for failure to provide medical care in violation of the Fourth and Fourteenth Amendments. Count II, brought on the same grounds as Count I, is against Elmore County Jail and Franklin—Sheriff of Elmore County. Finally, Count III is brought pursuant to Alabama Code § 6-5-410 against all five Defendants for wrongful death.

## V. DISCUSSION

### A.    Fourth and Fourteenth Amendment Claims

Plaintiff alleges, pursuant to § 1983, that the Defendants deprived Davis of his Fourth Amendment and Fourteenth Amendment rights, as a pretrial detainee, to receive necessary medical care. Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Coosada and Elmore County Jail move to dismiss the complaint on the grounds that Plaintiff fails to state a claim upon which relief may be granted. McKenzie, Smith, and Franklin do so on qualified immunity grounds.[2]

---

[2] The Court notes that Plaintiff, in her opposition to the Defendants' motions to dismiss, merely lists the legal standard for the last two steps of the qualified immunity analysis, assuming the Defendants all brought qualified immunity defenses and met their burden to show they acted under discretionary authority. Plaintiff provides no meaningful analysis or application of the law to the facts of this case. The burden is on the parties to formulate arguments and present law in support of their position. *See Rd. Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Nevertheless, the Court's own analysis finds no plausible allegations in the complaint from which the Defendants could be liable for violating the Constitution.

The Defendants analyze Plaintiff's denial of medical care claims against them under the Fourteenth Amendment alone, noting that Davis was a pretrial detainee when the alleged denial of medical care occurred. Plaintiff does not address whether Davis was a pretrial detainee when the alleged violations occurred. If Davis was a pretrial detainee when he was allegedly denied medical care, then the Fourteenth Amendment would govern. *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022). If, however, he was merely an arrestee, then the Fourth Amendment would apply. *Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005).

The Eleventh Circuit has never determined whether an arrestee is a pretrial detainee if his claims arise from conduct occurring post-arrest but before "the probable-cause-determination stage." *Crocker v. Beatty*, 995 F.3d 1232, 1247 & n.13 (11th Cir. 2021) (noting a circuit split "about how best to analyze claims that arise in this 'legal twilight zone'"); *see also Hicks*, 422 F.3d at 1254 n.7 ("The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit."). As recently as 2021, the Circuit was presented with this "legal twilight zone" in the excessive force context, but it declined to "clarify the distinction" because the plaintiff's claims in that case failed both Fourth Amendment and Fourteenth Amendment standards. *Crocker*, 995 F.3d at 1247.

Given the lack of clarity regarding the point at which the constitutional baton is passed from the Fourth to the Fourteenth Amendment, the Court finds it most appropriate

6

to analyze Plaintiff's denial of medical care claims against the Defendants under the Fourteenth Amendment deliberate indifference standard. *Cf. Ponce De Leon v. Jackson Mem'l Hosp.*, 2009 WL 3818429, at *3 (S.D. Fla. Nov. 13, 2009) ("In light of the absence of Eleventh Circuit precedent distinguishing between alleged denial of medical care by police to an arrestee and alleged denial of medical care by pretrial detention officials, this Court should apply the Fourteenth Amendment 'deliberate indifference' standard."). The Circuit was faced with a similar factual scenario to this case in *Burnette v. Taylor*, and the court applied only the Fourteenth Amendment. 533 F.3d 1325 (11th Cir. 2008). In that case, two sheriff deputies arrested the plaintiff, who allegedly was suffering from a drug overdose. *Id.* at 1328. Rather than bring the plaintiff to a medical facility for care, the deputies brought him straight to the county jail. *Id.* Both deputies "left shortly after taking [the plaintiff] to the jail [and] did not see [the plaintiff] again after dropping him off at the jail." *Id.* at 1328–29. In analyzing the plaintiff's denial of medical care claims against the arresting deputies, even though their alleged violations occurred post-arrest but before dropping the plaintiff off at the jail, the Circuit discussed only the Fourteenth Amendment deliberate indifference standard. *Id.* at 1331.

Although the plaintiff in *Burnette* brought only Fourteenth Amendment claims against the arresting deputies, Plaintiff in this case does not point the Court to a case permitting a Fourth Amendment claim for denial of medical care against an arresting officer. Therefore, the Court follows *Burnette* and applies the controlling Fourteenth Amendment deliberate indifference standard to Plaintiff's denial of medical care claims.

7

*Cf. Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir. 1988) (holding the Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by police"); *Slone v. Judd*, 2010 WL 2542283, at *6 (M.D. Fla. June 23, 2010) ("Following *Thomas*, [the controlling authority,] Plaintiff's constitutional claims regarding denial of medical care should be analyzed under the Fourteenth Amendment.").  Accordingly, all Fourth Amendment failure to provide medical care claims in this case are due to be dismissed.

### 1.   *McKenzie*

Plaintiff alleges that McKenzie acted with deliberate indifference in failing to provide medical care to Davis.  McKenzie raises a qualified immunity defense. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation and citation omitted).  To receive qualified immunity from suit in his individual capacity,[3] a public official must first prove that he was "performing discretionary functions" when the alleged wrongful conduct occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  If done, the burden then shifts to the plaintiff to allege facts that, if true, demonstrate that the official's conduct (1) "violated [the plaintiff's] constitutional right," and (2) that this right "was clearly established at the time

---

[3]  As will be discussed below, an "official capacity" claim against McKenzie is "only another way of pleading an action against" Coosada. *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020).  The Court therefore addresses an official capacity claim against McKenzie in its analysis of Plaintiff's claims against Coosada. *See infra* Part V.A.2.

of the alleged violation." *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022).   The relevant question at the second prong is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).   Plaintiff does not dispute that McKenzie was performing a discretionary function as a police officer conducting an arrest (*see* doc. 63 at 1), and so the Court proceeds to Plaintiff's two-pronged burden on the qualified-immunity analysis.

For Plaintiff to plausibly allege that McKenzie violated the Fourteenth Amendment by failing to provide medical care, she "must satisfy both an objective and a subjective inquiry." *Ireland*, 53 F.4th at 1287 (citation omitted).   The objective inquiry requires a plaintiff to "establish the existence of an objectively serious medical need." *Id.* (quotation and citation omitted).   The subjective inquiry requires a plaintiff to prove "that a government official was 'deliberatively indifferent' to" the plaintiff's serious medical need. *Id.* (citation omitted).   Courts synthesize the "deliberate indifference" inquiry into four elements:   whether "(1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the officer actually drew that inference, (3) the officer disregarded the risk of serious harm, and (4) the officer's conduct amounted to more than gross negligence." *Id.* at 1295 (citation omitted). Importantly, an officer is not liable for failing "to alleviate a significant risk that he *should have* perceived but *did not*." *Burnette*, 533 F.3d at 1331 (emphasis added) (citation omitted).

Plaintiff argues that McKenzie was deliberately indifferent to Davis' medical needs as a pretrial detainee.  Although Plaintiff does not specify what the "objectively serious" medical need was, she alleges that Davis' condition was so obvious that McKenzie should have drawn the inference that Davis suffered from a serious medical condition requiring immediate care rather than bringing him first to the jail.  Plaintiff alleges that "it was clear to" McKenzie that Davis "needed medical care"; that "even a lay person would easily recognize the necessity for medical attention"; and that, based on Davis' "behavior and the fact that there was no smell of alcohol coming from" him, McKenzie "was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and [McKenzie] drew that inference." (Doc. 45 at 6).

These conclusory allegations, however, do not state a plausible claim against McKenzie for failure to provide medical care.  The complaint does not allege facts that would demonstrate both that Davis suffered from an objectively serious medical condition and that McKenzie actually inferred a serious risk from Davis' symptoms. *See Iqbal*, 556 U.S. at 678.  Plaintiff, in fact, alleges that McKenzie "did not know what or if [Davis] was under the influence of any substance or if there were other medical issues occurring." (Doc. 45 at 6).  Plaintiff instead asks the Court to draw the same inference that she contends McKenzie drew the night of the arrest:  because Davis could not effectively drive, walk, and talk—with no evidence of alcohol influence—he was suffering from a serious medical condition.  The Court declines to do so.

10

In *Burnette*, officers faced similar symptoms from a detainee who soon after died in custody from a polydrug overdose. 533 F.3d at 1329.  At his arrest, the officers observed the plaintiff was "'strung out' on pills and other drugs," had "glassy eyes and dilated pupils," gave slow responses to questions, and had "a bottle of prescription pills" in his possession. *Id.* at 1328.  One officer said it was apparent that the plaintiff was "under the influence of something" but "did not smell alcohol." *Id.*  The Eleventh Circuit held that none of these facts raised an inference that the plaintiff suffered from a serious medical condition, and therefore none of the officers could have been deliberately indifferent to a serious medical condition. *Id.* at 1332.[4]  The court reasoned that "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." *Id.* at 1333.  Instead, for a constitutional violation to occur, facts alleged must demonstrate that an officer was deliberately indifferent to a readily apparent medical need beyond mere intoxication. *Id.*

The symptoms alleged in this case are similar to those alleged in *Burnette*. McKenzie perceived that Davis was "under the influence of something" due to his inability to effectively drive, walk, talk, and communicate, but he "did not smell alcohol." *Id.* at 1328.  Like the court in *Burnette*, this Court finds "[t]he symptoms that Plaintiff alleges [Davis] was exhibiting at the time of arrest are consistent with some use of drugs

---

[4]  Even if the facts of *Burnette* did give rise to the inference of a serious medical condition, the court "readily conclude[d]" that "the law was not already clearly established that what any of the [officers] did would violate federal law," and so the plaintiff would have also failed the second prong of qualified immunity analysis. *Id.* at 1332 n.7.

11

or alcohol but not necessarily indicative that medical attention was then required." *Id.* at 1331.   Notably, the complaint does not allege that Davis suffered from a specific medical condition, aside from the apparent intoxication.   And even if Davis' condition was so serious that McKenzie should have sought immediate medical care, this Court, like the Eleventh Circuit in *Burnette*, finds that on the second qualified immunity prong, "given the circumstances, the law [is] not already clearly established that what [McKenzie] did would violate federal law." *Id.* at 1332 n.7.

Moreover, regardless of whether McKenzie *could* have inferred a serious medical condition, Plaintiff simply provides the conclusory allegation that McKenzie "actually drew that inference." *Ireland*, 53 F.4th at 1295.   To find McKenzie individually liable for failing to provide medical care, Plaintiff must allege more than the fact that McKenzie "should have" inferred a serious medical condition; she must allege specific facts that, if true, would demonstrate that McKenzie *actually made* that inference. *See Burnette*, 533 F.3d at 1331.   Plaintiff asserts that McKenzie actually "drew that inference," without identifying *facts* to support that element of her cause of action. (Doc. 45 at 6). This conclusory and "formulaic recitation of [an] element[] of [her] cause of action will not do." *Iqbal*, 556 U.S. at 678.   Therefore, under the facts alleged, the Constitution did not require McKenzie "to seek medical attention for" Davis and he did not "deliberately ignore[] a serious medical condition that was obvious or known to him." *See Burnette*, 533 F.3d at 1332, 1333.   McKenzie's motion to dismiss the Fourteenth Amendment claim is therefore due to be granted.

2.      *Coosada*

Plaintiff claims that Coosada violated Davis' Fourteenth Amendment rights by failing to properly train its police officers to provide medical care to arrestees. Municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  Municipalities "may be sued for constitutional deprivations[,] . . . even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.  However, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. Instead, if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," then the municipality "as an entity is responsible under § 1983." *Id.*

To survive a motion to dismiss on a § 1983 claim against a municipality for violation of his constitutional right to receive necessary medical care, a plaintiff must allege facts that, if true, would demonstrate "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  To plausibly allege the existence of such a municipal policy or custom, a plaintiff must first "identify

13

either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690–91).

In some circumstances, "the need to provide training may be 'so obvious' that a municipality's failure to train officers can rise to the level of deliberate indifference and result in the municipality being subject to *Monell* liability." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  If "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," then "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable." *Harris*, 489 U.S. at 390.

In response to Coosada's motion to dismiss, the Plaintiff simply offers: "Plaintiff would disagree that Defendants Town of Coosada and Chief Leon Smith are immune from being sued for money damages." (Doc. 55 at 1).  Plaintiff supports this position with her allegation that "[t]he Defendants failed to properly train" McKenzie, who "failed to get medical help for [Davis]." (*Id.* at 2).  Plaintiff contends that Davis died as a direct result of McKenzie's failure "to obtain medical intervention," which was "done upon orders from or with the consent or acquiescence of [Coosada and Smith]." (Doc. 45 at 6).  Coosada's "policies, procedures, and customs," according to Plaintiff, therefore, proximately caused Davis' death. (*Id.* at 7).

14

These allegations are insufficient to support a claim against Coosada. Plaintiff does not allege sufficient facts that would demonstrate, if true, that Coosada either "officially promulgated" a policy to deny medical care to pretrial detainees or had "an unofficial custom or practice" to deny such care. *See Grech*, 335 F.3d at 1329. Plaintiff instead broadly alleges that, because of Coosada's "fail[ure] to properly train and/or supervise [McKenzie] regarding obtaining medical intervention for an individual who was clearly not consuming alcohol but who was having issues driving, walking, and communicating," McKenzie failed to provide Davis with necessary medical care. (Doc. 45 at 11). Without facts pointing to an official or unofficial Coosada policy in place, however, these conclusory allegations do not present a plausible claim against the municipality. Plaintiff does not allege that Coosada had an "officially promulgated" policy—or even "an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker"—to deny medical care to pretrial detainees such as Davis. *Grech*, 335 F.3d at 1329.

To the extent that Plaintiff argues Coosada is liable under *Monell* based on a failure to train, Plaintiff must allege facts to show "a pattern of improper training [that would] show that the City was aware of the deficiencies in its program." *Underwood*, 11 F.4th at 1333 (alterations adopted) (quotations and citation omitted). However, Plaintiff "does not allege any other past incidents where [Coosada's] officers[]" failed to provide medical care to pretrial detainees by bringing them directly to the jail rather than a

hospital.[5] *Id.*  Plaintiff does not allege "that the City was aware that its training on" when to provide medical care to pretrial detainees "was insufficient." *Id.*  All that remains in Plaintiff's complaint against Coosada are speculative and conclusory allegations of its failure to train.  Therefore, the complaint does not "state a claim to relief that is plausible on its face" against Coosada, and Coosada's motion to dismiss is due to be granted on the Fourteenth Amendment claim against it. *Iqbal*, 556 U.S. at 678.

To the extent that Plaintiff brings official capacity claims against McKenzie and Smith for violations of Davis' Fourteenth Amendment rights, those claims, too, must be dismissed.  Plaintiff must also "satisfy the requirements of *Monell* to obtain . . . relief against" McKenzie and Smith officially. *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020).  An "official capacity" suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Therefore, Plaintiff's allegations and arguments made against McKenzie and Smith in their official capacity are identical to those made against Coosada, which fail the *Monell* standard.  Accordingly, any official capacity claims against McKenzie and Smith are also due to be dismissed.

---

[5]  Plaintiff seems to allege three past occurrences of apparent prisoner overdoses only against Elmore County Jail and Franklin in Count II. (*See* Doc. 45 at 9).  Even if she intends to allege these occurrences against Coosada and Smith as well, as discussed below, these three dissimilar occurrences spanning over many years would be insufficient to put Coosada and Smith on notice that there was "a pattern of improper training [that would] show that the City was aware of the deficiencies in its program." *Underwood*, 11 F.4th at 1333; *see also infra* Part V.A.4.

3.      *Smith*

Plaintiff alleges that Smith violated Davis' Fourteenth Amendment rights in the same manner that Coosada did: by failing to properly train his subordinate police officers to provide medical care to arrestees. Smith raises a qualified immunity defense. Plaintiff does not dispute that Smith was performing a discretionary function as the Chief of Coosada Police Department, and so the Court proceeds to the qualified-immunity analysis.[6]

Plaintiff sues Smith in his supervisorial role as the chief of police. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone*, 326 F.3d at 1360 (citation omitted). Rather, for a supervisor to be liable under § 1983, the supervisor must either (1) "personally participate[] in the alleged unconstitutional conduct" or (2) there must be "a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* While Plaintiff generally alleges that Smith knew about and ignored Davis' serious medical condition, she fails to allege facts that show Smith personally participated in any alleged unconstitutional conduct. Accordingly, Plaintiff must allege facts plausibly showing a causal connection between actions taken by Smith and the alleged constitutional violation.

---

[6] The Court analyzes Plaintiff's § 1983 claims against Smith under the same qualified-immunity test applied to McKenzie.

17

A causal connection can be established in the following ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights," or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (alterations adopted) (quotations and citation omitted). A plaintiff's burden to hold a supervisor "liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (alteration adopted) (citation omitted).

Plaintiff provides the same response to Smith's motion to dismiss as she did to Coosada's motion to dismiss: "Plaintiff would disagree that Defendants Town of Coosada and Chief Leon Smith are immune from being sued for money damages." (Doc. 55 at 1). Plaintiff points the Court to her allegation in the complaint that "[t]he Defendants failed to properly train their employee, Defendant McKenzie, and Defendant McKenzie failed to get medical help for the Deceased." (*Id.* at 2). This response is insufficient to support Plaintiff's "extremely rigorous" burden to rebut the qualified immunity defense raised by Smith. *Cottone*, 326 F.3d at 1360. Plaintiff's allegations against Smith are based on Smith's supervisorial role as the Chief of the Coosada Police Department. Plaintiff claims it was Smith's "consent or acquiescence" to McKenzie's "actions and/or failure of actions" that led to the deprivation of Davis' rights. (*See* Doc. 45 at 6). However, Plaintiff alleges no facts to show such consent or acquiescence.

18

Because there is no allegation that Smith was personally involved in the alleged constitutional violation, Plaintiff must allege facts that could prove a causal connection. *Id.* at 1360. Plaintiff does not do so. There is insufficient factual allegation (1) that there was a widespread history of Coosada police officers failing to give pretrial detainees medical care; (2) that Smith had any "custom or policy" in place pertaining to offering (or not offering) pretrial detainees medical care; or (3) that Smith "directed [officers] to act unlawfully or knew that [officers] would act unlawfully and failed to stop them." *Id.* Therefore, no facts can support a claim that Smith was either personally involved or causally connected to McKenzie's alleged constitutional violation. Plaintiff's Fourteenth Amendment claim against Smith for failing to properly supervise is therefore due to be dismissed.

### 4.     *Franklin*

Plaintiff alleges that Franklin violated Davis' Fourteenth Amendment rights by showing deliberate indifference to his medical needs. Franklin moved to dismiss any federal claim brought against him in his official capacity as the Sheriff of Elmore County. (Doc. 50 at 3). Franklin argues that he is due sovereign immunity under the Eleventh Amendment for official capacity claims brought pursuant to § 1983. Plaintiff failed to address this claim in her opposition to Franklin's motion to dismiss. "[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Plaintiff's response, that she "disagrees that Defendant

Sheriff Franklin is barred from being sued due to the Eleventh Amendment," without any analysis, is insufficient. Notwithstanding Plaintiff's failure to address this claim in any meaningful way, the law is clear that Sheriffs are immune from suit in their official capacities under the Eleventh Amendment. *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) ("In the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." (alterations adopted)); *Turquitt v. Jefferson County*, 137 F.3d 1285, 1288 (11th Cir. 1998) ("[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail."). The official capacity claims under § 1983 against Franklin, therefore, are due to be dismissed.

As to the individual claims pursuant to § 1983 against Franklin, he raises a qualified immunity defense. Plaintiff does not dispute that Franklin was, at all material times, performing discretionary functions as Sherriff of Elmore County, and so the Court proceeds to Plaintiff's burden on the qualified-immunity analysis.[7] Plaintiff sues Franklin based on his supervisorial role as Sherriff. Therefore, Plaintiff's claims against Franklin must survive the same standard as her claims against Smith. She generally alleges that Franklin knew about and ignored Davis' serious medical condition, but she fails to allege facts that show Franklin personally participated in any alleged unconstitutional conduct. Accordingly, Plaintiff must allege facts showing a causal connection between actions taken by Franklin and the alleged constitutional violation.

---

[7] The Court analyzes Plaintiff's § 1983 claims against Franklin under the same qualified immunity test applied to McKenzie and Smith.

Plaintiff attempts to show a "causal connection" by alleging that Franklin was aware of "a history of widespread abuse" that reasonably put him "on notice of the need to correct the alleged deprivation," and he failed to do so. *Cottone*, 326 F.3d at 1360. A history of widespread abuse must be "obvious, flagrant, rampant and of continued duration," not just "isolated occurrences." *Keith v. DeKalb County*, 749 F.3d 1034, 1048 (11th Cir. 2014) (citation omitted). In other words, "[a] few isolated instances . . . will not suffice" to establish "the existence of widespread abuse." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (citation omitted).

Plaintiff alleges that Franklin knew that previous prisoners at the Elmore County Jail died due to apparent drug overdoses yet "failed to make provisions, policies, and/or protocols for having inmates, who appeared to be on drugs, properly cleared by medical professionals prior to placing them in a cell." (Doc. 45 at 10). These facts, however, even if true, do not demonstrate a history of abuse so "obvious, flagrant, rampant and of continued duration" to put Franklin on notice that Elmore County Jail failed to provide medical care to its inmates. *See Keith*, 749 F.3d at 1048. The complaint alleges three inmates died at the jail over a span of eight years, the last instance occurring almost three years before Davis' death. The three alleged deaths were not factually similar to each other nor to Davis' death: one a confirmed drug overdose; one a "suspected" drug overdose; and one a mix of drugs with a preexisting medical condition. Plaintiff does not explain how these instances were similar to Davis' death, which the complaint alleges was due to a medical condition that made it difficult for Davis to drive, walk, and talk.

21

Even if these occurrences were similar, three incidents over the span of eight years are not sufficient to put Franklin on notice that Elmore County Jail employees needed additional training or supervision for when to provide medical care to inmates. *See Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) (four instances of abuse in four years does not put supervisors on notice); *Carter v. Butts County*, 110 F. Supp. 3d 1325, 1349 (M.D. Ga. 2015) (finding four incidents of officer misconduct "do not amount to abuses so 'obvious, flagrant, rampant, and of such continuous duration' as to impose supervisory liability"), *reversed on other grounds by* 821 F.3d 1310 (11th Cir. 2016).  Therefore, no facts alleged demonstrate "a history of widespread" denial of medical care to inmates at Elmore County Jail. *See Cottone*, 326 F.3d at 1360.  The complaint does not support a claim that Franklin was either personally involved or causally connected to the alleged denial of medical care in this case, and Plaintiff's Fourteenth Amendment claim against Franklin for failing to properly supervise is due to be dismissed.

### 5. *Elmore County Jail*

Elmore County Jail moved to dismiss Plaintiff's claim against it because, as a county jail, it is not an entity with the capacity to be sued under § 1983. (Doc. 50 at 2). Plaintiff failed to address this claim or any claim against Elmore County Jail in her opposition to its motion to dismiss.  To allege a viable § 1983 claim for a violation of a constitutional right, a plaintiff must name as a defendant an entity capable of being. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  The capacity of a party to be sued is "determined by the law of the state in which the district court is held." *Id.*  Under

Alabama Code § 14-6-1, "[t]he sheriff has the legal custody and charge of the jail in his or her county." ALA. CODE § 14-6-1.  Both Alabama law and Eleventh Circuit law are settled that "a county sheriff's department lacks the capacity to be sued." *Dean*, 951 F.2d at 1215.  As such, the Elmore County Jail, as a building or structure managed by the Elmore County Sheriff, is not a suable entity. *Id.*; *see also White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991); *Davis v. Montgomery Cnty. Det. Facility*, 2019 WL 1048842, at *2 (M.D. Ala. Mar. 5, 2019).  The federal claims against the Elmore County Jail are due to be dismissed.

## B.  State Law Claims

In addition to federal claims pursuant to § 1983, Plaintiff brings a state-law wrongful death claim against all defendants pursuant to Alabama Code § 6-5-410.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim.  Where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004).  Before doing so, the Court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015). "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540.  In this case, there are state-law

immunity issues raised, which are best resolved by the state courts. Further, there is nothing before the Court to suggest that the remaining factors—convenience and fairness—weigh in favor of retaining subject-matter jurisdiction over claims arising under state law. Moreover, the Court can discern no significant prejudice to any party, particularly considering 28 U.S.C. § 1367(d)'s provision tolling the statute of limitations on any of the state-law claim. Accordingly, the Court declines to exercise supplemental jurisdiction over the state-law claim pursuant to § 1367(c)(3).

## VI. CONCLUSION

Accordingly, for good cause, it is

ORDERED that the Defendants' motions to dismiss (docs. 48, 49, & 61) are GRANTED as to Counts I and II in favor of the Defendants. These claims are DISMISSED. It is further

ORDERED that the Court DECLINES to exercise supplemental jurisdiction over the remaining state-law claim in this case (Count III) pursuant to 28 U.S.C. § 1367(c), and this claim is DISMISSED without prejudice.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 19th day of July, 2023.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE